UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAQUELINE K. SOUZA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-3744 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| ERIE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

After a bad storm blew through Evanston, Illinois, Plaintiff Jaqueline Souza found herself with a damaged roof. Fortunately, she had taken out a property insurance policy from Defendant Erie Insurance Company to protect her and her property from just that kind of thing.

Or so she thought. Souza filed a claim with Erie for the damage. But when Erie assessed the damage to Souza's home, it concluded that things weren't as bad as they seemed. In fact, the insurance company concluded that the costs of the damage failed to exceed Souza's deductible under the policy, so it denied her claim.

Souza insists that Erie has undervalued her claim and needs to pay up. She filed a three-count complaint under Illinois law, alleging that the company breached its contract with her, acted unreasonably in handling her claim, and otherwise engaged in unfair business practices. Erie, in turn, moved to dismiss.

For the following reasons, Defendant's motion is granted in part and denied in part.

## Background

At the motion-to-dismiss stage, the Court must accept as true the complaint's well-pleaded allegations. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court

"offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Plaintiff Jacqueline Souza is a homeowner in Evanston, Illinois. *See* Cplt., at ¶ 5 (Dckt. No. 1). Like most homeowners, she sought to protect her investment. So, she purchased an insurance policy on the property from Defendant Erie Insurance Company. *Id.* at ¶ 6.

According to the complaint, the policy covered the property "against perils including wind/hailstorms." *Id.* The coverage included up to $1,399,500 for damage to the home itself; $279,900 for damage to other structures on the property; $1,049,625 for damage to the home's contents and other personal property; and unlimited loss-of-use benefits for a one-year period. *Id.*

On August 10, 2021, a storm blew through Evanston. *Id.* at ¶ 7. The storm brought intense winds, which took a toll on Souza's home. Her property suffered "significant damage to the roof and gutters necessitating costly repairs." *Id.* at ¶ 8.

After the storm, Souza took stock of the damage to her property. *Id.* at ¶ 9. She then "began mitigating the loss as quickly as possible." *Id.* And, thinking her insurance policy would cover it, she promptly filed a claim with Erie. *Id.*

In response to her claim, Erie sent a field adjuster to inspect the damaged property for itself. *Id.* at ¶ 10. After assessing the damage to the property, the insurer determined that the costs of the damage did not exceed the deductible on Souza's policy. *Id.* at ¶ 12. So, it denied Souza coverage. *Id.* Souza would have to foot the bill for the storm herself.

Erie's inspection, and its assessment of the damage to the property, sit at the heart of this dispute. According to the complaint, Erie's inspection wasn't thorough, and it wasn't accurate.

"The inspection was brief and failed to document the full scope of damages resulting in an estimate grossly underreporting the extent of damage." *Id.* at ¶ 10.

To prove it, Souza enlisted independent adjusters to inspect her property and prepare their own damages estimate. *Id.* at ¶ 13. Those adjusters documented a total of $283,514.38 of damage to the house, apparently a much larger sum than Erie had calculated. *Id.* Souza submitted that independent estimate to Erie, along with a bid from a construction company to repair the roof. *Id.* at ¶ 14.

Erie hasn't put much stock in these third-party assessments and continues to deny coverage under the policy. *Id.* at ¶ 16. Souza attributes Erie's obstinance to impropriety. According to the complaint, Erie has "failed and refused to evaluate the information and surrounding facts, choosing instead to rely entirely on the incorrect assumptions and conclusions of its agents, employees, or consultants." *Id.* at ¶ 15.

Additionally, the complaint alleges that Erie "purposefully and/or negligently" failed to pay out her claim, misrepresented the terms and conditions of her policy, "manipulated its pricing software to artificially suppress the costs of repairs," and failed to adequately account for overhead and profit in its damages estimates. *Id.* at ¶¶ 18–22. As Souza sees it, Erie has "[n]o reasonable basis . . . for [its] delay and/or refusal to provide covered benefits due and owing under the Policy." *Id.* at ¶ 16.

Souza alleges that she has incurred significant expenses because of Erie's foot-dragging and chicanery. *Id.* at ¶ 24. For one thing, her property remains in disrepair. *Id.* at ¶ 17. Souza also had to pay her own experts to assess the damage, and she predicts that she will continue to incur additional expenses in the future. *Id.* at ¶¶ 23–25.

The parties still do not see eye to eye on the extent of the damage. So, Souza sued Erie based on its handling of her claim, and to enforce the policy. She brings three counts: (1) breach of contract (Count I); (2) a violation of section 155 of the Illinois Insurance Code (Count II); and (3) a violation of the Illinois Consumer Fraud Act (Count III). *Id.* at ¶¶ 27–37.

Erie now moves to dismiss. *See* Def.'s Mtn. to Dismiss (Dckt. No. 8).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Analysis

Souza's three-count complaint alleges that Erie breached the terms of its contract with her, used deceptive practices to undervalue the damage to her property, and vexatiously and unreasonably delayed covering her claim. *See* Cplt., at ¶¶ 27–37 (Dckt. No. 1).

Erie has moved to dismiss the complaint in its entirety. *See* Def.'s Mtn. to Dismiss (Dckt. No. 8). The Court takes each count in turn.

Before diving in, the Court offers one prefatory observation. Souza's response to Defendant's motion to dismiss left the Court a bit puzzled.

Calling it a "response" might not be the correct choice of words. Souza did not respond at all to Defendant's arguments supporting dismissal of Counts I or III. *See* Pl.'s Resp. (Dckt. No. 12). That's two of the three claims.

The failure to respond has consequences. Souza's "silence in response to defendant['s] motion to dismiss operates as abandonment of any argument against dismissing the claims." *See Sroga v. Rendered Servs. Inc.*, 2019 WL 6173424, at *1 (N.D. Ill. 2019) ("It is a longstanding rule that a plaintiff waives his claims when he fails to develop arguments or fails to respond to alleged deficiencies in a motion to dismiss.") (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005); and *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)).

A failure to respond does not automatically require the Court to grant the motion to dismiss. But it does leave this Court empty-handed. And it forces the Court to fend for itself when looking at the complaint.

The response has other problems, too. For one thing, descriptions of the complaint and its contents are almost uniformly inaccurate. *Compare* Pl.'s Resp., at 8 (Dckt. No. 12) (stating that the storm damage occurred on January 30, 2019), *with* Cplt., at ¶ 7 (Dckt. No. 1) (stating that the storm damage occurred on August 10, 2021). The same is true of references to Defendant's motion.

Souza also attributes content to Defendant's motion that simply isn't there. *See, e.g.*, Pl.'s Resp., at 10 (asserting that Erie cites to *Scottsdale Insurance Co. v. Waukegan*, 2007 U.S. Dist. LEXIS 67710, at *5 (N.D. Ill. 2007), which it does not); *id.* at 10–11 (arguing that

5

Defendant "seeks to strike paragraph 16" of the complaint, an argument that Defendant does not make).

These head-scratching problems left the Court wondering how things could have gone sideways. Maybe Plaintiff's counsel is not familiar with the complaint. Or, maybe Plaintiff's counsel was looking at filings from some other case. Who knows. The whole thing has the air of a cut-and-paste job gone wrong.

In short, this Court takes a look at the adequacy of the complaint, without much help from the party who filed it.

## I. Breach of Contract (Count I)

Count I alleges that Erie breached its contract with Souza by refusing to cover her claim. *See* Cplt., at ¶¶ 27–30 (Dckt. No. 1). The claim is straightforward: the insurer had a duty to pay, but didn't pay.

Erie moves to dismiss Count I because the complaint does not identify the terms of the policy that Erie allegedly breached. *See* Def.'s Mtn. to Dismiss, at 7 (Dckt. No. 8). Erie points out that the complaint "fail[s] to identify the definite and certain terms of the insurance policy," and "does not quote from any language from the applicable insurance policy." *Id.* at 6–7. Plaintiff makes no response.

Courts in this district are split on whether a plaintiff must identify the specific provisions of the contract that the defendant allegedly breached. *See Danqing Hou v. Synchrony Bank*, 2020 WL 2128729, at *3 (N.D. Ill. 2020) ("There is some disagreement in this district regarding whether a plaintiff bringing a breach of contract claim must identify the particular provision of the contract that was allegedly breached."); *see also US Dealer License, LLC v. US Dealer Licensing LLC*, 2019 WL 7049927, at *4 (N.D. Ill. 2019) (collecting cases); *Peerless Network,*

*Inc. v. MCI Commc'n Servs., Inc.*, 2015 WL 2455128, at *5 (N.D. Ill. 2015) ("The law on the issue . . . is divided in this district.").

However, "[a] majority of courts in the district have found that a plaintiff is not required to cite a specific contract provision, 'but must at least place the defendant on fair notice of the contractual duty it breached.'" *US Dealer License*, 2019 WL 7049927, at *4 (quoting *Stark v. Select Portfolio Servicing, Inc.*, 2017 WL 6988657, at *2 (N.D. Ill. 2017)); *see also Riviana Foods, Inc. v. Jacobson Warehouse Co.*, 2020 WL 2802877, at *4 (N.D. Ill. 2020).

Under that standard, "[e]ven if the Court does not require [the plaintiff] to specify which contractual provision was breached, she must nonetheless allege enough facts to establish that a breach plausibly occurred." *Danqing Huo*, 2020 WL 2128729, at *3; *see also Sumi Cho v. Rosato Perea*, 2019 WL 4645419, at *10 (N.D. Ill. 2019) ("[W]hile a plaintiff bringing a breach-of-contract claim is not required to attach a contract to her complaint, she must plead sufficient facts to establish that a breach occurred.") (citations omitted); *Melnick v. Betfair Interactive, LLC*, 563 F. Supp. 3d 822, 824 (N.D. Ill. 2021) ("While [failing to identify specific contractual terms] is not necessarily fatal to [plaintiff's] claim, plaintiff must in all events plead sufficient facts to suggest plausibly that a breach of some contractual obligation occurred."); *Int'l Cap. Grp. v. Starrs*, 2010 WL 3307345, at *1 (N.D. Ill. 2010) (concluding that a plaintiff "is not required to identify a specific contract provision that was breached in order to plead breach of contract under the federal pleading standard, but a plaintiff must still plead enough facts to establish a breach, for example, the existence of some unsatisfied obligation").

The case can move forward so long as the plaintiff has alleged enough facts to put the defendant on notice of the contractual duty that it breached. *See Hughes v. Sw. Airlines Co.*, 2019 WL 1375927, at *3 (N.D. Ill. 2019); *Montgomery v. Scialla Assocs., Inc.*, 2016 WL

7

7116585, at *6 (N.D. Ill. 2016) ("A claim for breach of contract must 'allege[] enough facts to put [a defendant] on fair notice of the 'contractual duty' it breached.'") (quoting *Peerless*, 2015 WL 2455128, at *7).

Pinning down particular provisions in an insurance policy feels like pinning down a legal theory, which isn't necessary in a complaint. *See Bartholet v. Reishauer*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("[T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal."); *see also Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) ("Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."). The Federal Rules merely require notice pleading, meaning that a complaint simply must give a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2).

It seems unnecessary to get more specific in this particular case, too. The complaint squarely alleges that the policy provided coverage for property damage, and that Erie stiffed the policyholder. If Erie was truly stumped about the nature of the claim, Erie could have filed a motion for a more definite statement under Rule 12(e).

Plaintiff's complaint clears the low hurdle of Rule 12(b)(6). The complaint identifies the underlying incident – the wind storm – that damaged Souza's property. *See* Cplt., at ¶ 7 (Dckt. No. 1). And it alleges that Erie "owes a duty to [Plaintiff] to make prompt and proper payment for all claims, [and] to make its policy limits available to insureds for losses." *Id.* at ¶ 28.

The complaint then lays out a laundry list of the ways in which Erie breached the terms of the contract. The complaint alleges that Erie (1) "fail[ed] to indemnify" her; (2) "rel[ied] upon a policy exclusion to deny payment which is, and should be inapplicable"; (3) "den[ied] payment on [her] claim without meeting its affirmative burden of proving by a preponderance of

8

evidence that [her] loss was proximately caused by non-covered peril or a peril excluded by the policy"; and (4) "fail[ed] to retain the appropriate experts and/or consultants to evaluate the damages to the subject property." *Id.* at ¶ 29.

These allegations are enough to put Erie on fair notice of the contractual duties it allegedly breached. Although Souza does not recite the exact terms of the contract, her complaint plainly alleges that Erie breached its duty to fairly assess the damage to her property and cover her claim. *See Starke*, 2017 WL 6988657, at *2 (finding that plaintiff's allegations that the defendant "breached the agreement by failing to prepare and record the lien release and continuing to treat the mortgage as if it [was] in default" were sufficient to state a claim for breach of contract, despite the fact that the complaint omitted the agreement's terms); *see also Riviana Foods*, 2020 WL 2802877, at *4 (reaching the same conclusion where plaintiff's "succinct and straightforward" complaint alleged that defendant breached its contract by failing to deliver cargo as scheduled, failing to properly care for the cargo, and delivering the cargo in damaged condition). Souza "does not need to be anymore specific at this stage of litigation." *Peerless*, 2015 WL 2455128, at *7 (citations omitted).

Of course, Souza will have to be more precise down the line. Discovery may require her to pin down her claims. For example, an interrogatory might ask her to identify any provisions of the policy that Erie allegedly breached.[1] *See* Fed. R. Civ. P. 26, 33; *see also Riviana Foods*, 2020 WL 2802877, at *4 ("[T]he tools of discovery are available for [defendant] to seek to

---

[1] Defendant is unlikely to be blindsided when that time comes. After all, Defendant already appears familiar with Plaintiff's policy, the entirety of which it attaches to its motion to dismiss. *See* Policy (Dckt. No. 8-1, at 16–74 of 74). The attached policy, viewed alongside the allegations in Plaintiff's complaint, goes a long way towards curing the deficiencies that Defendant asserts in its motion. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *see also Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) ("'[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'") (emphasis omitted) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (1994)).

9

identify those provisions [allegedly breached]."). And at trial, the jury would need to know how, exactly, Erie allegedly failed to comply with the policy. But for now, Souza's complaint is sufficient.

The Court therefore denies Defendant's motion to dismiss Count I.

## II. Violation of Section 155 of the Illinois Insurance Code (Count II)

Count II is a claim under section 155 of the Illinois Insurance Code. *See* Cplt., at ¶¶ 31–33 (Dckt. No. 1); *see also* 215 ILCS 5/155.

Section 155 of the Illinois Insurance Code allows an insured to recover attorneys' fees, costs, and statutory damages when the insurer's delay in settling a claim is "vexatious and unreasonable." *See* 215 ILCS 5/155. The statute provides:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $60,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

*See* 215 ILCS 5/155.

The statute provides the "legislature's remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits." *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1018 (Ill. 2003) (quotation marks omitted). However, "[a]ttorneys['] fees may not be awarded simply because an insurer takes an unsuccessful position in litigation, but only where

10

the evidence shows that the insurer's behavior was willful and without reasonable cause." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000). "This means that an insurer's conduct is not vexatious and unreasonable if: (1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Id.* (citations omitted).

Erie first argues that the Court should dismiss Count II because the complaint does not specifically identify any vexatious and unreasonable conduct by Erie. *See* Def.'s Mtn. to Dismiss, at 9–11 (Dckt. No. 8). Defendant characterizes the complaint's allegations as "generalized statements regarding Defendant's alleged fail[ure] to pay for all claimed damages," or "simply restate[ments of] various provisions within the Illinois Insurance Code and Illinois Administrative Code." *Id.* at 9–10. As Erie see it, these conclusory allegations lack the necessary "*specific* facts that demonstrate Defendant breached Section 155." *Id.* at 9 (emphasis in original).

"Whether an insurer acted unreasonably or vexatiously presents an issue of fact requiring courts to consider the totality of [the] circumstances." *See Med. Protective Co. v. Kim*, 507 F.3d 1076, 1086 (7th Cir. 2007) (citation omitted). Even so, "[c]onclusory allegations that an insurer acted vexatiously or unreasonably, 'without some modicum of factual support,' are insufficient to state a plausible claim for relief under Section 155." *Bao v. MemberSelect Ins. Co.*, 2022 WL 1211509, at *3 (N.D. Ill. 2022) (quoting *Scottsdale Ins. Co. v. City of Waukegan*, 2007 WL 2740521, at *2 (N.D. Ill. 2007)).

11

The statute does not penalize an insurer's denial of coverage, standing alone. "Simply pleading that [the defendant] knowingly and intentionally refused to provide insurance coverage" is not enough to plausibly suggest relief under section 155. *Scottsdale Ins. Co.*, 2007 WL 2740521, at *2. A section 155 plaintiff must instead point to facts showing that the insurer's behavior was vexatious or unreasonable – that is, "willful and without reasonable cause." *Id.* (citing *Citizen First Nat'l Bank*, 200 F.3d at 1110).

Additionally, bare assertions "that [the defendant] allegedly violated the Illinois Administrative Code and the Illinois Insurance Code" are equally insufficient, "even under the liberal notice pleading standards." *9557, LLC v. Travelers Indem. Co. of Conn.*, 2016 WL 464276, at *4 (N.D. Ill. 2016). "[S]imple recitations of the various codes that [the plaintiff] alleges [the defendant] violated" do not get a complaint over the line. *Id.*

Here, Souza's complaint is sparse, but it passes muster. Souza alleges that Erie engaged in vexatious and unreasonable conduct designed to undervalue her claim and deny her coverage. *See* Cplt., at ¶ 33 (Dckt. No. 1). She supports these allegations with specific examples. For instance, Souza asserts that Erie deliberately "manipulated its pricing software to artificially suppress the cost of repairs below market value." *Id.* at ¶ 21. She also alleges that the company omitted key variables in calculating its damages estimate, including "fail[ing] to include adequate overhead and profit." *Id.* at ¶ 22.

These examples give enough factual color to her allegations to allow the claim to go forward at this stage. *See, e.g.*, *Wheeler v. Assurant Specialty Prop.*, 125 F. Supp. 3d 834, 841 (N.D. Ill. 2015) (alleging that the defendant insurer hired a second engineer to examine plaintiff's property and produce a biased report was sufficient to state a claim); *Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011) (same where plaintiff alleged that

defendant insurer knowingly misrepresented relevant facts related to coverages and denied coverage based on speculation); *P & M/Mercury Mech. Corp. v. W. Bend Mut. Ins. Co.*, 483 F. Supp. 2d 601, 604 (N.D. Ill. 2006) (same where plaintiff alleged that insurer did not rely on an accurate report or consider all the information).

Erie responds that these allegations merely amount to Souza's "own characterizations of Defendant's alleged conduct." *See* Def.'s Mtn. to Dismiss, at 10 (Dckt. No. 8). But that's what a complaint always does, and that's all Souza needs to do at the pleading stage. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("'[A]ll that is necessary is that the claim for relief be stated with brevity, conciseness, and clarity.' . . . 'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not.") (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1215, at 165–73 (3d ed 2004)). Souza has told her side of the story with the requisite degree of specificity, and for now, the Court must take that version as true. *See AnchorBank*, 649 F.3d at 614.

Erie next argues that Count II fails because a bona fide coverage dispute exists between the parties. *See* Def.'s Mtn. to Dismiss, at 12 (Dckt. No. 8). Erie maintains that its refusal to provide coverage to Souza was based on its objective assessment that the damages did not exceed the deductible. *Id.* at 14. That conduct, as Defendant sees it, is not vexatious and unreasonable within the meaning of section 155. *Id.*

As stated above, reasonable disputes between the insurer and the insured do not implicate section 155's statutory remedy. The statute proscribes only vexatious and unreasonable conduct – only behavior that is "willful and without reasonable cause" is actionable. *Scottsdale Ins. Co.*, 2007 WL 2740521, at *2.

"If there is a bona fide dispute regarding coverage – meaning a dispute that is '[r]eal, genuine, and not feigned' – statutory sanctions [under section 155] are inappropriate." *Kim*, 507 F.3d at 1087 (quoting *McGee v. State Farm Fire & Cas. Co.*, 734 N.E.2d 673, 683 (Ill. App. Ct. 2000)); *see also State Farm Mut. Auto. Ins. Co. v. Smith*, 757 N.E.2d 881, 887 (Ill. 2001) ("[W]here a *bona fide* dispute concerning coverage exists, costs and sanctions [under section 155] are inappropriate.").

The idea is that an insurer does not act unreasonably and vexatiously within the meaning of the statute where it "reasonably relie[s] upon evidence." *Illinois Founders Ins. Co. v. Williams*, 31 N.E.3d 311, 318 (Ill. App. Ct. 2015) (quoting *Morris v. Auto-Owners Ins. Co.*, 606 N.E.2d 1299 (Ill. App. Ct. 1993)). "An insurance company does not violate section 155 merely by unsuccessfully challenging a claim." *W. Bend Mut. Ins. v. Norton*, 940 N.E.2d 1176, 1180 (Ill. App. Ct. 2010). The statute does not create a duty to settle. *Id.*

"Whether an insurer acted unreasonably or vexatiously presents an issue of fact, requiring courts to consider the totality of [the] circumstances." *Kim*, 507 F.3d at 1086; *see also Uptown Serv. Station, Inc. v. Arch Ins. Co.*, 2018 WL 3417012, at *2 (N.D. Ill. 2018) (holding that courts "must consider the totality of the circumstances" under section 155). As a result, courts routinely decline to dismiss claims based on the existence of a bona fide dispute at the motion to dismiss stage, before the court has the benefit of all the evidence. *See, e.g.*, *W. Wind Express v. Occidental Fire & Cas. Co. of N.C.*, 2013 WL 2285799, at *4 (N.D. Ill. 2013) (holding that "the Court may not decide the [bona fide dispute] issue on the pleadings alone"); *Bao*, 2022 WL 1211509, at *5 ("Resolution of [the existence of a bona fide dispute] presents a factual question that may be more amenable to resolution on summary judgment than at the pleadings stage.") (cleaned up).

14

Defendant's argument is therefore premature. It may very well be that the dispute between the parties boils down to a reasonable disagreement over coverage under the policy. Perhaps Erie genuinely believes that Plaintiff's claim does not exceed her deductible under the policy and that she is not entitled coverage as a result. But Souza poses another theory entirely: that Erie unfairly and unobjectively assessed her claim.

Determining which theory is true does not lend itself to resolution at the motion to dismiss stage. Time will tell. In the meantime, the claim will proceed. *See Strategic Cap. Bancorp, Inc. v. St. Paul Mercury Ins. Co.*, 2014 WL 562970, at *5–6 (C.D. Ill. 2014) (holding that although defendant "may ultimately have the winning argument that a Section 155 award is unwarranted" because its position was based on a bona fide coverage dispute, that conclusion was inappropriate at the motion to dismiss stage).

The Court therefore denies Defendant's motion to dismiss Count II.

### III. Violation of the Illinois Consumer Fraud Act (Count III)

Count III is a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). *See* Cplt., at ¶¶ 34–37 (Dckt. No. 1). Souza basically alleges that Erie violated the Act and engaged in unfair business practices by using claim investigation methods designed to pay her as little as possible. *Id.* at ¶ 37.

Erie argues that the Court should dismiss Souza's ICFA claim because it is nothing more than a breach-of-contract claim in different clothing.[2] *See* Def.'s Mtn. to Dismiss, at 15 (Dckt. No. 8) ("Count III of Plaintiff's Complaint does not include[] *any* factual allegations to support a claim under ICFA, let alon[e] allegations that would distinguish Plaintiff's ICFA claims from her

---

[2] As with Count I, Souza fails to address to this argument in her response.

breach-of-contract claims.") (emphasis in original). It further contends that the claim is preempted by section 155 of the Illinois Insurance Code. *Id.* at 14.

Under Illinois law, "an insurer's conduct may give rise to both a breach of contract action and a separate and independent tort action." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 904 (Ill. 1996). A plaintiff may therefore "bring an independent tort action for insurer misconduct if the plaintiff alleges and proves the elements of the separate tort." *Young v. Allstate Ins. Co.*, 812 N.E.2d 741, 747 (Ill. App. Ct. 2004).

So, a breach of contract claim and an ICFA claim can theoretically coexist. But they may not cover the same ground, or be based on the same facts. "Mere allegations of bad faith or unreasonable and vexatious conduct, without more . . . do not constitute [] a tort," and courts must "look beyond the legal theory asserted to the conduct forming the basis for the claim." *Cramer*, 821 N.E.2d at 904.

"When the conduct is merely a breach of contract or conduct proscribed by section 155, a Consumer Fraud Act claim on that basis is preempted by section 155." *Cook ex rel. Cook v. AAA Life Ins. Co.*, 13 N.E.3d 20, 33 (Ill. App. Ct. 2014); *see also Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) ("The Consumer Fraud Act is not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. . . . [A] consumer-fraud claim under the statute requires something more than a garden-variety breach of contract.") (quotation marks omitted).

Here, Souza's claims overlap and therefore run headlong into preemption. Souza alleges that Erie violated the Illinois Consumer Fraud Act "by hiring vendors with the purpose of paying Plaintiff as little as possible while charging the cost of [t]hose vendors against Plaintiff's Policy." *See* Cplt., at ¶ 37 (Dckt. No. 1). But that is the same conduct that underlies Plaintiff's

16

contractual and section 155 claims. *See id.* at ¶ 29(f) (alleging that Erie breached the contract "[b]y failing to conclusively and objectively determine the proximate and efficient cause of loss"); *id.* at ¶ 33(b) (alleging that Erie violated section 155 by "refusing to pay Plaintiff for the wind/hail loss claim without conducting a full, fair, objective, and unbiased investigation").

At bottom, both Souza's breach of contract claim and her ICFA claim allege that Erie used unfair processes to assess the damage to her property. Erie may have stacked the deck against her, but Souza can construct only so many claims with that conduct as their foundation. *See Wexler v. Chubb Nat'l Ins. Co.*, 2022 WL 279571, at *4–5 (N.D. Ill. 2022) (dismissing plaintiffs' consumer-fraud claim where it was "merely a restatement of their breach of contract claim and thus preempted by Section 155"); *GuideOne Mut. Ins. Co. v. Good Shepherd Lutheran Church*, 2021 WL 3077658, at *5 (N.D. Ill. 2021) ("In order to show fraud, [plaintiff] needed to allege fraudulent acts that were distinct from those alleged in its breach of contract claim.").

The Court therefore grants Erie's motion to dismiss Count III. And because Souza failed to respond, the Court dismisses that claim with prejudice. *See Lekas*, 405 F.3d at 614–15; *see also Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999) ("[B]y failing to respond responsively to the motion to dismiss . . . [plaintiff] forfeited her right to continue litigating her claim.").

## Conclusion

For the foregoing reasons, the Court denies Defendant's motion to dismiss Count I (breach of contract) and Count II (the Illinois Insurance Code). The Court grants Defendant's motion to dismiss Count III (the Illinois Consumer Fraud and Deceptive Business Practices Act), and dismisses Count III with prejudice.

Date: July 25, 2023

Steven C. Seeger
United States District Judge